## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SIMON DEKERF, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-cv-2667 |
| | § | |
| DEREK BEHRINGER, | § | |
| *Defendant*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Simon Dekerf, Plaintiff, complaining of Derek Behringer, and for cause of action will respectfully show unto the Court as follows:

"subjecting a compliant and non-threatening arrestee to a lengthy dog attack was objectively unreasonable."

*Cooper v. Brown*, 844 F.3d 517, 525 (5th Cir. 2016)

## SUMMARY

On December 17, 2020, Defendant Derek Behringer, an officer with the Waxahachie Police Department, directed his Police K9 to viciously attack Plaintiff Simon Dekerf despite Simon not attempting to flee, Simon not making any threatening statements, Simon clearly not possessing a weapon due to wearing only his torn underwear, there being no weapons in the area, Simon having his hands empty and in view of the officers in compliance with their orders to do so, Simon moving to the ground while being escorted by an officer in compliance with his order to do so, Simon having his hands behind his back while being bitten, and Simon pleading in pain for Defendant Behringer to remove the dog. The unjustified and lengthy dog bite caused immense pain and permanent scarring. Simon now sues Defendant Behringer for violations of his constitutional rights under the Fourth Amendment to be free from unreasonable seizures by way of excessive force.

1

## I.
## PARTIES

1.      Plaintiff Simon Dekerf is currently an inmate in the Texas Department of Criminal Justice housed in the French Robertson Unit in Abilene, Texas.

2.      Defendant Derek Behringer is an individual residing in Ellis County, Texas and is a police officer with the City of Waxahachie Police Department and may be served at his place of employment at the Waxahachie Police Department located at 630 Farley St., Waxahachie, Texas, 75165, or wherever he may be found. Defendant Behringer is being sued in his individual capacity.

## II.
## JURISDICTION AND VENUE

3.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

4.      Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because the Defendant is domiciled and/or resides in the Northern District of Texas, and all of the cause of action accrued in the Northern District.

## III.
## FACTS AND ALLEGATIONS

5.      On December 17, 2020, Defendant Derek Behringer, an officer with the Waxahachie Police Department, directed his Police K9 to viciously attack Plaintiff Simon Dekerf despite Simon not attempting to flee, not making any threatening statements, clearly not possessing a weapon due to wearing only his torn underwear, having his hands empty and in view of the officers in compliance with their orders to do so, moving to the ground while being escorted by an officer in compliance with his order to do so, and pleading in pain for Defendant Behringer to remove the dog.

6.    Defendant Behringer directed his Police K9 to attack Simon because Defendant Behringer was seeking revenge and to punish Simon because Defendant Behringer believed Simon had injured a fellow officer twelve hours prior.

7.    Twelve hours prior, Waxahachie Police made contact with Simon as he was driving his vehicle.

8.    The officers learned that Simon had a warrant and asked him to step out of his vehicle.

9.    Simon refused and began to drive away.

10.    One of the officers dove into Simon's open driver's side door as Simon was driving away.

11.    As Simon was driving away, the officer fell out of the open door he dove through initially.

12.    The officer indicated his foot was injured as a result of the fall.

13.    After going to the hospital, it was determined that the officer's foot had no fractures but was bruised.

14.    Simon eventually accepted responsibility for his conduct by pleading guilty to his criminal charge associated with that police contact.

15.    Roughly twelve hours after Simon drove away from the officers, the police received a tip that Simon was located at a residence in Bardwell, Texas.

16.    This was not a situation where the police were chasing a suspect in hot pursuit but was more akin to execution of a warrant on a home where they had information a suspect was inside.

17.    The police had time to set up a perimeter around the home before entering.

18.    In fact, the officers were not even allowed to just enter the home using the exigent circumstance of "hot pursuit" but instead needed to get permission from the homeowner to enter to search for Simon.

19.    Defendant Behringer lied to the homeowner and told her "this guy tried to kill a cop this morning" despite that clearly not being the truth from what occurred earlier that day.

20.    The homeowner then told Defendant Behringer that Simon was inside of her home.

21.    Defendant Behringer asked the homeowner, "is he in the house?"

22.    She replied, "yes."

23.    The owner told Defendant Behringer that Simon did not have any weapons.

24.    Defendant Behringer asked her, "does he have any weapons."

25.    She replied, "no."

26.    Defendant Behringer then stated he was going to go grab his dog and went to retrieve his Police K9 from his patrol car.

27.    Defendant Behringer did not need a Police K9 to search for a person inside of a home as that is routinely done by drawing weapons and searching the home.

28.    However, Defendant Behringer wanted to get his Police K9 so that the Police K9 could bite Simon as revenge and punishment because Defendant Behringer believed Simon had attempted to injure a fellow officer earlier that morning.

29.    Before entering the home, Defendant Behringer asked the homeowner, "is there any kids or animals in the house?

30.    She replied, "no."

31.    The homeowner then told Defendant Behringer which bedroom Simon would be located.

32.     Before entering the home, Defendant Behringer asked the homeowner, "do you have any guns or weapons in the house?"

33.     She replied, "no."

34.     Defendant Behringer walked to the bedroom where the homeowner stated Simon would be located.

35.     None of the officers inside of the home had weapons or tasers drawn as they were not in fear that Simon was going to present a threat since they had just been told by the homeowner that Simon was not armed and that there were no weapons in the home.

36.     The officers believed the homeowner that Simon was unarmed and that there were no weapons in the home as none of the officers had weapons drawn once entering the room where Simon was found.

37.     Defendant Behringer opened the door to the bedroom where he was told Simon would be located.

38.     Simon was laying in the bed with the covers over him sleeping.

39.     The below snapshot from Defendant Behringer's body camera video[1] shows the covers pulled up overs Simon in the bed in the top left of the screen marked with a red arrow.

---

[1] Defendant Behringer's body camera video is attached as Exhibit A and fully incorporated herein.



40.    Defendant Behringer yelled out "Simon!"

41.    Simon woke up and yelled.

42.    Defendant Behringer yelled out "Show me your hands or your gonna get bit."

43.    Simon immediately complied by throwing the covers off to show hands.

44.    The below snapshot from Defendant Behringer's body camera video shows the covers thrown off of Simon in the bed in the top left of the screen with his right arm raised and marked with a yellow arrow and his left hand marked with a red arrow.



45.    Defendant Behringer again yelled, "show me your hands or your gonna get bit!"

46.    Simon was complying with the order by raising his empty hands above him so that Defendant Behringer could see he did not have a weapon in them.

47.    Defendant Behringer then yelled, "Climb out of the bed! Keep your hands visible now!"

48.    Defendant Behringer followed that up by yelling, "Climb out of the bed or you're getting bit!"

49.    Simon attempted to comply with the order to climb out of the bed because he was told he would be bit if he did not, but this required him to lower his hands to help himself get out of the bed.

50.    Simon did not make any quick movements with his hands but simply lowered them slowly so that he could get out of the bed while keeping his hands open with palms up.

51.    Despite Simon's compliance with the orders given, Defendant Behringer then released the Police K9 to bite Simon.

52.    The Police K9 jumped onto the bed as Simon was complying with the order to climb out of the bed.

53.    The Police K9 fell off the bed.

54.    Defendant Behringer approached the side of the bed.

55.    Simon was lying on his side with all of the covers off the bed at this point and the dog growling and barking at Simon on the side of the bed, being held back only by Defendant Behringer's grasp of the leash.



56.    Defendant Behringer could see that Simon was only wearing torn underwear and did not have clothing to hide a weapon.

57.     Simon held his hands up with his palms open and facing Defendant Behringer, complying with the orders to keep his hands visible so that Defendant Behringer could see he was not holding a weapon.



58.     Officer Curtis Farmer grabbed Simon's leg to pull Simon off the bed but the Police K9 started attacking Simon and Office Farmer let go.

59.     The Police K9 bit Simon on the leg but was unable to hold a grasp – this is known as a "nip."

60.     Simon was lying on his back with his empty hands up in the air and his palms open facing the now three officers in the room while the Police K9 continued barking and attempting to attack Simon in the bed.

61.     None of the officers in the room had weapons drawn due to Simon not presenting a threat since he was unarmed, holding his hands up as directed, holding his hands open with his

palms facing the officers showing he was not holding anything, and only wearing torn underwear indicating he was not hiding a weapon on his person.

62.    While the below snapshot is somewhat obscured by the Police K9's ear, it depicts Simon on his back with both hands raised, empty, and palms facing the officers as Officer Farmer begins to reach for Simon's wrist.



63.    Officer Farmer reached for Simon's wrist despite none of the officers having their guns or tasers drawn because the officers see that Simon is not armed with a weapon and is in a position of surrender with both empty hands raised above his head with his palms shown to the officers, is not wearing clothing where a weapon could be hidden, and is surrounded by three officers and a Police K9.

64.    As Officer Farmer reached for Simon's wrist, Simon kept both of his empty hands raised above his head with his palms shown to the officers and did not pull away or resist in any way.



65.     Officer Farmer pulled Simon off the bed and Simon did not pull away from him, push off of him, attempt to remove himself from the officer's grasp, or resist in any way.

66.     As Officer Farmer was pulling Simon from the bed and taking him to the floor, Defendant Behringer yelled "**get that man**" and then the Police K9 attacked Simon.

67.     When Defendant Behringer stated "**get that man**" and the Police K9 attacked Simon by biting him, Simon was complying with Officer Farmer by moving to the floor while being escorted by Officer Farmer who removed him from the bed while holding onto his wrist, and Simon was not pulling away, fighting, attempting to flee, or resisting in any way.

68.     It is obvious that when Defendant Behringer yelled "**get that man**" he was only doing so in an effort to have the Police K9 bite Simon to punish Simon because Defendant Behringer believed Simon had injured his fellow officer twelve hours prior.

69.    This is obvious because when Defendant Behringer yelled "**get that man**" and the Police K9 attacked Simon, Simon was complying with orders, had his hands visible, clearly was unarmed, and not resisting or attempting to flee.

70.    Simon then put his hands behind his back while he was being bitten by the Police K9.

71.    In the below snapshot from Defendant Behringer's bodycam video, Simon can be seen on the ground with both arms behind his back and his hands visible as the Police K9 bites him while Defendant Behringer is holding the leash of the Police K9 and not stopping the bite.



72.    Defendant Behringer did not remove the Police K9 from biting Simon for over thirty seconds as Simon yelled out in obvious pain asking for help and for the officers to remove the Police K9 from biting him.

73.    It was entirely unnecessary for Defendant Behringer to allow the Police K9 to bite Simon as he was going to the ground with Officer Farmer, as Simon was not fighting, not

attempting to flee, not pulling away, and being compliant with the officer's direction to go to the ground.

74.    It was entirely unnecessary for Defendant Behringer to allow the Police K9 to bite Simon as he was going to the ground with Officer Farmer, as no weapon could be seen in the bed, on the floor, or anywhere within reach, the homeowner told Defendant Behringer that Simon was not armed and that there were no weapons in the home.

75.    It was entirely unnecessary for Defendant Behringer to allow the Police K9 to continue biting Simon as he was on the ground, as Simon was not fighting, not attempting to flee, not pulling away, and being compliant with the officer's direction to put his hands behind his back.

76.    It was entirely unnecessary for Defendant Behringer to allow the Police K9 to continue biting Simon as he was on the ground, as no weapon could be seen in the bed, on the floor, or anywhere within reach, the homeowner told Defendant Behringer that Simon was not armed and that there were no weapons in the home.

77.    Defendant Behringer finally removed the Police K9 from biting Simon **prior to** Officer Farmer placing Simon into handcuffs.

78.    Defendant Farmer did not even pull his handcuffs out until **after** the Police K9 was removed from Simon.

79.    This shows that Simon did not need to be held in the grasp of the Police K9's teeth until being restrained in handcuffs.

80.    The Police K9 caused immense pain and serous physical injuries to Simon as a result of the unnecessary and lengthy bites.

81.     Officer Brandon Stephens wrote in his report, "When Simon was brought out of the residence, I learned he'd been bitten by K9 Hondo. Simon was bleeding from his right arm and side torso."

82.     Officer Stephens went to the hospital with Simon.

83.     Officer Stephens also wrote in his report, "Once we arrived at the hospital and Simon's wounds were cleaned, I took several more photos of his injuries. Simon had two bite marks: one to his upper right side under his arm, and one over his right buttock."

84.     At the hospital, Simon was treated for bite wounds caused by the Police K9.

85.     The bite wounds resulted in permanent scars on Simon's body.

86.     Defendant Behringer was at all times acting under the color of law.

## IV.
## CAUSES OF ACTION

### Count One

### Excessive Force
### Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983
### Against Defendant Derek Behringer

87.     Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

88.     Acting under the color of law, Defendant Behringer deprived Simon of the rights and privileges secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

89.     Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983.

90.     The amount of force used by Defendant Behringer against Simon as described above, specifically but not limited to, when Defendant Behringer released his K9 unit to attack

Simon and then allowed his K9 unit to keep attacking Simon, after Simon had been complying with the command to show his hands by lying on his back with his empty hands raised so that his palms were facing the officers letting them know he had nothing in his hands, when Simon was complying with Officer Farmer's direction to go to the ground, was not fighting, was not attempting to flee, while he was clearly only wearing torn underwear and was obviously not hiding a weapon on his person or in his clothing, and after he put both arms behind his back while on the ground and being bitten by the Police K9, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Simon.

91.    A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

92.    Although officers may need to use "physical force ... to effectuate [a] suspect's compliance" when he refuses to comply with commands during a traffic stop, the officers still must assess "the relationship between the need and the amount of force used." *Newman v. Guedry,* 703 F.3d 757, 763 (5th Cir. 2012) (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

93.    A constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest. *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018).

94.    Fifth Circuit case law makes clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced. *Id.*

95.    Fifth Circuit case law makes clear that an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased. *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 413 (5th Cir. 2009).

96.     As the Fifth Circuit has explained,

> "[i]t is well-established that '[t]he excessive force inquiry is confined to whether the [officers or other persons were] in danger at the moment of the threat that resulted in the [officers' use of deadly force].' " *Rockwell v. Brown*, 664 F.3d 985, 992–93 (5th Cir. 2011) (quoting *Bazan ex rel. Bazan v. Hidalgo County.*, 246 F.3d 481, 493 (5th Cir. 2001)) (emphasis omitted). So, the focus of the inquiry should be on "the act that led [the officer] to discharge his weapon[.]" *Manis*, 585 F.3d at 845.

*Amador v. Vasquez*, 961 F.3d 721, 728 (5th Cir. 2020), *cert. denied,* 209 L. Ed. 2d 252, 141 S. Ct. 1513 (2021).

97.     Fifth Circuit case law clearly establishes that permitting a dog to continue biting a compliant and non-threatening arrestee is objectively unreasonable. *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016).

98.     In *Cooper*, 844 F.3d at 522−23, the Fifth Circuit held that officers used excessive force by permitting a dog to continue biting a suspect when they had no reason to think he had a weapon, his hands were visible, and he complied with officers' commands. *Escobar v. Montee*, 895 F.3d 387, 394 (5th Cir. 2018).

99.     Defendant Behringer subjected Simon to a lengthy dog attack that inflicted serious injuries, even though he had no reason to believe that Simon posed a threat since Simon's hands were visible and empty and thus there was no reason to believe he had a weapon, Simon was only wearing torn underwear and it was clear and obvious that he did not have a weapon on his person, he had complied with Officer Farmer taking him to the ground, no weapon could be seen in the bed, on the floor, or anywhere within reach, the homeowner told Defendant Behringer that Simon was not armed and that there were no weapons in the home, Simon was showing his empty hands

which were behind his back, and Simon was pleading with the officers to stop the dog from biting him. *Id.* at 523.

100.    Defendant Behringer continued applying force through the Police K9 bite even after Simon was complying with orders to "show his hands" and had his hands visible to the officers. *Id*.

101.    Simon was not seen with a weapon prior to Defendant Behringer causing the Police K9 to attack Simon or while Defendant Behringer allowed the Police K9 to continue attacking him.

102.    In *Escobar*, the Fifth Circuit distinguished *Cooper*, on the facts that a knife was still within reach of [Plaintiff] Escobar and Escobar's own mother had informed the officer that Escobar would have to be killed; thus, the court found a reasonable officer could conclude that Escobar's surrender was not genuine. *Escobar* 895 F.3d at 395.

103.    However, here, unlike *Escobar,* no weapon was within reach of Simon and the homeowner told Defendant Behringer that Simon was not armed and there were no weapons in the home. *Id*.

104.    Instead, here, like *Cooper*, Defendant Behringer permitted a Police K9 to continue biting Simon when he had no reason to think Simon had a weapon, Simon's hands were visible, and Simon complied with both Defendant Behringer's commands and Officer Farmer's commands. *Cooper* 844 F.3d at 522; *Escobar* 895 F.3d at 394.

105.    Force must be reduced once a suspect has been subdued. Notably, "subdued" does not mean "handcuffed." *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 335 (5th Cir. 2020).

106.    Simon's hands were empty and visible to Defendant Behringer when Defendant Behringer directed the Police K9 to attack Simon and while Defendant Behringer allowed the Police K9 to continue attacking Simon.

107.    Simon was not threatening any officer or other person immediately prior to when Defendant Behringer directed the Police K9 to attack Simon or while Defendant Behringer allowed the Police K9 to continue attacking him, as Simon was lying on his back with his empty hands above him in an obvious position of surrender and then was lying on the ground with both empty hands behind his back in an obvious position of surrender.

108.    Although Simon had evaded arrest earlier that day, Simon was no longer evading arrest and was not actively resisting arrest when Defendant Behringer directed the Police K9 to attack Simon or while Defendant Behringer allowed the Police K9 to continue attacking him, as Simon was lying on his back with his empty hands above him in an obvious position of surrender and then was lying on the ground with both empty hands behind his back in an obvious position of surrender.

109.    A reasonable officer would know that directing a Police K9 to attack a suspect or allowing a Police K9 to continue attacking a suspect is <u>clearly excessive</u> when engaging with citizens such as Simon, who had been complying with the command to show his hands by lying on his back with his empty hands raised so that his palms were facing the officers letting them know he had nothing in his hands, who was complying with Officer Farmer's direction to go to the ground, who was not fighting, who was not attempting to flee, while he was clearly only wearing torn underwear and was obviously not hiding a weapon on his person or in his clothing, and after he put both arms behind his back while on the ground and being bitten by the Police K9.

110.    A reasonable officer would know that directing a Police K9 to attack a suspect or allowing a Police K9 to continue attacking a suspect is <u>clearly unreasonable</u> when engaging with citizens such as Simon, who had been complying with the command to show his hands by lying on his back with his empty hands raised so that his palms were facing the officers letting them know he had nothing in his hands, who was complying with Officer Farmer's direction to go to the ground, who was not fighting, who was not attempting to flee, while he was clearly only wearing torn underwear and was obviously not hiding a weapon on his person or in his clothing, and after he put both arms behind his back while on the ground and being bitten by the Police K9.

111.    As a direct result of the force used against him by Defendant Behringer directing the Police K9 to bite him and then allowing the Police K9 to continuing biting him, Plaintiff has suffered physical injury, pain, permanent disfigurement, and mental anguish for which he sues herein.

112.    These injuries were not caused by any other means.

## V.
## <u>PUNITIVE DAMAGES</u>

113.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

114.    When viewed objectively from the standpoint of Defendant Behringer, at the time of the occurrence, Defendant Behringer's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

115.    As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by Defendant Behringer which was recklessly or callously indifferent to Simon's federally protected rights, Simon is entitled to recover punitive damages in an amount within the jurisdictional limits of this Court.

## VI.
## <u>DAMAGES</u>

116.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

117.    Plaintiff's injuries were a foreseeable event.

118.    Those injuries were directly and proximately caused by Defendant Behringer's use of excessive and unreasonable force against Plaintiff through the unnecessary and prolonged use of a K9 unit.

119.    As a result, Plaintiff is entitled to recover all actual damages allowed by law.

120.    Plaintiff contends Defendant Behringer's conduct constitutes malice, evil intent, or reckless or callous indifference to Plaintiff's constitutionally protected rights. Thus, Plaintiff is entitled to punitive damages.

121.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

    a.    Physical injury, pain, and suffering;

    b.    Permanent physical disfigurement;

    c.    Emotional distress, torment, and mental anguish; and

    d.    Medical expenses.

122.    Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff seeks to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VII.
## <u>ATTORNEY'S FEES</u>

123.    If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

**VIII.**
**JURY REQUEST**

124.    Plaintiff respectfully requests a jury trial.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendant Behringer, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

/s/*James P. Roberts*
**JAMES P. ROBERTS**,
Texas Bar No. 24105721
**SCOTT H. PALMER**
Texas Bar No. 00797196
**BREANTA BOSS**
Texas Bar No. 24115768

**SCOTT H. PALMER, P.C.**
15455 Dallas Parkway,
Suite 540, LB 32
Addison, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
james@scottpalmerlaw.com
scott@scottpalmerlaw.com
breanta@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF